ANGELA RIVERA QUIRÓS ET AL., Plaintiffs and Appellees, *v.* HEIRS OF ANTONIO RAMOS RODRÍGUEZ, Defendants and Appellants.

No. 8922. Argued March 6, 1945.—Decided February 19, 1946.

*Francisco Parra Capó* for appellants. *Francisco Capó Pagán* for appellees.

Mr. Chief Justice Travieso delivered the opinion of the court.

The plaintiffs, children and grandchildren of Marcelino Quirós and his wife Isidora Figueroa, brought the action of revendication herein and alleged, in brief, that Doña Isidora and Don Marcelino having died on February 29, 1903, and July 30, 1905, respectively, the plaintiffs were declared sole and universal heirs of the decedents; that ever since July 30, 1905, the plaintiffs, in the proportionate share pertaining to each under the law, have held the undivided ownership and possession of a parcel of land, with an area of 43 acres (*cuerdas*), more or less, which is located in the ward of Quebradas, Guayanilla; that neither the plaintiffs nor their predecessors in interest have ever conveyed to any person the ownership or possession of said property; that ever since the middle of 1921, the defendants, claiming to be the heirs of Felícita Irizarry, without any title or right whatsoever, have taken and withheld possession of the whole of the said property, without the consent of the plaintiffs, or of their predecessors in interest; and, lastly, that during the period from 1921 to the date of the filing of the complaint, the defendants have received and appropriated to their own use the fruits, crops, and products of said property, which are valued at $10,000 after deducting the expenses for cultivation and preservation. The plaintiffs prayed that they be declared owners in fee, entitled to the immediate possession of the immovable, and that the defedants be adjudged to account for, and pay, the amount of the rents and profits which they received during

the time of their occupancy and until the restoration of the property to the plaintiffs.

The defendants answered and denied that the plaintiffs had held the ownership or possession of the property at any time subsequent to July 30, 1905. They alleged that Marcelino Quirós and his wife Doña Isidora had owned the realty in question as community property; that when Doña Isidora died, on February 29, 1903, one-half of said realty became the property of the widower, Don Marcelino, and the other half descended to the children and grandchildren of the deceased; that the half belonging to the widower Don Marcelino was sold by the Marshal of the Municipal Court of Ponce in execution of a judgment of recovery, which had been rendered in an action originally brought by Bartolomé Toro against Don Marcelino and later continued against his heirs, plaintiffs herein, the said half being conveyed to the aforesaid Toro by a deed of July 10, 1907, executed by the marshal; and that by a deed of March 5, 1908, Bartolomé Toro sold that half of the property to Felícita Irizarry, mother of the defendants herein. The defendants further alleged that the undivided interest which belonged to Isidora Figueroa and which, upon the dissolution of the conjugal partnership at her death, passed to her heirs, plaintiffs herein, was acquired by José Antonio Ramos y Rodríguez, father of the defendants, by a deed executed in his favor by the plaintiffs on March 22, 1904; and that the portion belonging to Reinalda Quirós was subsequently acquired by Eugenio Rodríguez López, by a judgment of April 3, 1917, and later sold to the defendants; and thus the parents of the defendants, and the latter as their heirs, have successively become the owners of the whole property, which they have likewise possessed uninterruptedly, since 1904 to 1905, when the above-mentioned deeds were executed.

As special defenses, the defendants set up the ordinary and extraordinary prescriptions of 20 and 30 years, respectively.

At the trial the partnership Mario Mercado e Hijos was substituted for the defendants Alfonso and Rafael Ramos Irizarry, it having acquired the interests held by those defendants in the property in controversy.

On November 30, 1943, the District Court of Ponce reconsidered its judgment of December 30, 1942, and rendered another instead declaring the plaintiffs to be the owners of the property claimed by them and ordering the defendants to vacate and place at the disposal of the plaintiffs the said property and to pay to the plaintiffs the sum of $10,000, as rents and profits received by the defendants, plus interest thereon at the legal rate, costs, and $600 as attorney's fees.

The appeal taken by the defendants is based on nine assignments of error, claimed to have been committed by the trial court.

Before going into a discussion of the assignments of error, it seems advisable to state that, according to the genealogical chart (plaintiffs' Exhibit 1), accepted by the defendants, Marcelino Quirós and his wife Isidora Figueroa during their marriage had six children, named María Valentina, María Dorotea, María Pascuala, Jesús, Regina, and María Bernarda. Jesús died on April 14, 1905, leaving as his heirs his children Marcelino, Isidoro, Felícita, Juana, Jova, Bernardino, Leonor, and Saturnino Quirós González. Regina Quirós Figueroa died on November 13, 1900, leaving as her heirs her children Juan José and Juana María Rivera Quirós. The former died without issue, and the latter left as her heirs her children Pedro, Simplicio, Isabel and Vicenta Rivera Quirós. María Bernarda died on September 15, 1896, leaving as her heirs her four children Dionisia (who died single), Lorenzo, Bernardino, and Margarita González Quirós.

The defendants-appellants urge that the lower court erred in holding that the plaintiffs were co-owners in indivision of the property in question, when the uncontroverted documentary evidence shows that the predecessor in interest

of the plaintiffs had sold to Bartolomé Toro on June 27, 1904, 20 out of the 43 acres which said predecessor in interest and his wife held as community property; and that Jesús, María Dorotea, María Valentina, and María Pascuala Quirós y Figueroa, and Juan José and Juana María Rivera Quirós, had transferred to José Antonio Ramos, predecessor in interest of the defendants, "all the rights and interests which they might have," among others, in the 43-acre property involved in this controversy.

The deed of July 10, 1907 (defendants' exhibit "B"), which was introduced by the defendants in order to prove the acquisition by them of the half of the 43-acre property that belonged to Marcelino Quirós, shows that Bartolomé Toro had brought suit against Quirós to compel the latter to execute a deed of sale covering a parcel of 20 acres which Quirós had sold to him in 1904. Quirós having died, said suit was prosecuted against his heirs, who were adjudged to execute a deed in favor of Bartolomé Toro. In the deed, executed by the marshal, the 20-acre parcel conveyed is described and it is said that "the property belongs to the defendant Marcelino Quirós, and the parties hereto are unable to state the nature of his title, since the same is unknown to them."

The defendants introduced as "Exhibit C" the deed of March 5, 1908, whereby Bartolomé Toro and his wife sold to Felícita Irizarry Ramos, mother of the defendants, the 20-acre parcel which Toro had acquired through the deed executed in his favor by the marshal. Those deeds (defendants' exhibits "B" and "C") could not be recorded because the 20-acre parcel did not appear previously recorded in favor of Quirós or his heirs.

The evidence shows that Bartolomé Toro acquired the 20 acres in virtue of a judgment rendered by the Municipal Court of Ponce on March 11, 1907, in an action originally brought against Marcelino Quirós and later continued against his heirs to compel the defendants to execute a conveyance

covering the 20 acres. That said 20-acre parcel formed a part of the 43-acre tract now claimed by the plaintiffs is shown by the testimony of the plaintiff Bernardino González, Quirós, who, upon being questioned by his own attorney, stated that in 1907 a suit was brought in the municipal court concerning the property now claimed, whereby Bartolomé Toro sought to compel Marcelino Quirós to execute a conveyance involving 20 acres of land.

The evidence also shows that in 1916 the plaintiffs brought an action against the predecessor in interest of the defendants to recover the same property involved herein. In that action the plaintiffs alleged (1) that the heirs of Marcelino Quirós were the owners of a 63-acre property; (2) that Bartolomé Toro acquired 20 acres of *that property* through a judgment rendered by the Municipal Court of Ponce on March 11, 1907; (3) that in virtue of that judgment Bartolomé took possession of the *whole* of the property of 63 acres; and (4) that the plaintiffs were the sole owners of the *remaining* 43 acres.

In their new action of revendication the plaintiffs now allege that since *July 30, 1905* (the date on which Marcelino Quirós died) they have held possession of the whole of a property of *43 acres,* which they acquired by inheritance from their father Marcelino Quirós; that said property of *43 acres* is recorded in the registry in the name of Marcelino Quirós; and that they were ousted from the said property, not in 1907 as they formerly alleged, but in 1921.

The evidence for the plaintiffs shows that the property in question has been recorded in the name of Marcelino Quirós *since 1886* as a property containing *43 acres.*

It appears, then, that the property of 43 acres now claimed by the plaintiffs is the same one which in 1916 they described as containing 63 acres. Long before there was any controversy between the parties or their predecessors in interest, it appeared recorded as a property of 43 acres. It seems

obvious that in 1916 it was described as having an area of 63 acres for the sole purpose of evading the effects of the judgment whereby 20 acres of that property was awarded to Bartolomé Toro. But that is not the only expedient resorted to by the plaintiffs in attempting to establish title to the property. Their present complaint alleges—and the plaintiffs insisted in stating under oath—that they held possession of the property until 1921. Their complaint in 1916 alleged that they had been ousted in 1907. It is manifest that the only object of the allegations contained in the last complaint, and of the evidence adduced in support thereof as to the date on which the plaintiffs were ousted, was to overcome any title by acquisitive prescription which might be claimed by the defendants. This is readily shown by the testimony of the plaintiff Bernardino González Quirós, who stated that he was (in 1941 when the trial was held) 48 years old; that he and his brothers lived in the property until 1921 when their grandfather died (that happened in 1905) and "shortly thereafter we were dispossessed," and that he was 14 or 15 years of age when they were evicted from the property; but later he insisted that they had not been dispossessed until 1921, the only date which the witness seemed to be able to remember. Afterward, his own attorney asked him: "Tell the truth; speak clearly; whether there was any litigation or something like that," and the witness answered: "There was litigation." It should be remembered that in 1916 the plaintiffs alleged that they had been ousted in 1907 as a result of the action brought in the municipal court, wherein 20 acres pertaining to the property were awarded to Bartolomé Toro.

The most reasonable conclusion is that said 20 acres form part of the 43-acre property. The lower court erred in deciding that the defendants had failed to prove that they held title to 20 acres out of the one-half interest belonging to Marcelino Quirós in the property of 43 acres sought to be recovered herein.

 In order to establish their alleged just title to the one-half interest pertaining to Isidora Figueroa de Quirós, as community property in the 43-acre tract, the defendants introduced (defendants' exhibit "A") the deed of March 22, 1904, whereby Jesús, María Dorotea, María Valentina, and María Pascuala Quirós y Figueroa, and Juan José and Juana María Rivera Quirós, children of Regina Quirós y Figueroa, all of legal age, in their capacity as heirs *ab intestato* of Isidora Figueroa, assigned and transferred to José Antonio Ramos, predecessor in interest of the defendants, all rights and interests which said heirs might have in the property of 43 acres and in another parcel of 12 acres, "the assignee being subrogated in the same place, degree, and preference held by the assignors." The recording of said deed was denied "as the rights assigned to José Antonio Ramos did not appear recorded in the name of the assignors." The lower court admitted this document but it held that said deed of assignment "could not be considered," because it was not recorded in the registry of property, and hence could not prejuice the rights of third persons. In support of its ruling, it cited § 389 of the Mortgage Law and the decisions of this court in *Kohn* v. *Martínez,* 40 P.R.R. 37, and *Alvarez* v. *Estate of Chavier,* 13 P.R.R. 71.

Section 389 of the Mortgage Law provides that "no document or instrument which has not been recorded in the registry whereby rights subject to record under said law, are constituted, transferred, acknowledged, modified, or discharged, shall be admitted in (the) courts, if the purpose of the presentation should be to enforce to the prejudice of a third person a right which should have been recorded."

In *Alvarez* v. *Estate of Chavier, supra,* which was an action of revendication, the plaintiff alleged that he acquired the property in controversy by virtue of a public deed which had not been recorded. The lower court sustained a general demurrer relying on the requisites set forth in § 389 of the Mortgage Law. In reversing that judgment, this court held

that said Section was not applicable "because the plaintiff has not presented to the court any document that had been admitted to record and should have been rejected, and moreover it does not appear that the defendant, as regards the plaintiff, should be considered as a third person." It was further held that "the defendant can not be considered as a third person until it may have been proven to the satisfaction of the court that he has recorded in the register of property some real title covering the property in question."

The action involved in *Kohn v. Martínez, supra,* was likewise an action of revendication. The defendant assigned as error the action of the lower court in not considering as admissible evidence a certain deed introduced by the defendant-appellant, on the ground that the same had not been recorded in the registry of property. The judgment appealed from was affirmed, and it was held that "if the defendant is actually occupying the parcel of land claimed by plaintiffs and covered by the latter's title, then he had no right to introduce the title in question to controvert or challenge the title of the plaintiffs because this would be in contravention of the provisions of Article 389 of the Mortgage Law whose text is clear and definite."

The legal situation in the case at bar is wholly different from the one presented by the cases which we have just discussed. The possession of the property of 43 acres claimed by the plaintiffs appears recorded, since July 26, 1886, in the name of Marcelino Quirós y Centeno, predecessor in interest of the plaintiffs. Since the property was acquired by Quirós during his marriage with Isidora Figueroa, upon the death of the latter in February 1903, he became entitled to a one-half undivided interest therein as community property, and the other half descended, as inheritance from the decedent, to her children and grandchildren, plaintiffs in the present action. On March 22, 1904, subsequent to the death of Isidora Figueroa, the children and grandchildren of the

decedent—with the exception of three children of María Bernarda Quirós y Figueroa (she died on September 15, 1896) —who had been declared her heirs *ab intestato,* by an order of February 27, 1904, assigned all the rights and interests held by them as such heirs in the property of 43 acres and in another parcel to José Antonio Ramos, father of the defendants, and this assignment was embodied in the public deed which was offered as "Exhibit A" by the defendants and rejected by the lower court. The description of the 43-acre property contained in said deed is identical with the one which appears in the registry in the first inscription thereof in the name of Marcelino Quirós and which is set forth in the complaint herein. The recording of the deed of assignment was denied because the rights and interests assigned thereby did not appear recorded in the names of the assignors and the proper cautionary notice was entered.

Are the provisions of § 389 of the Mortgage Law applicable to the facts stated above? We are of the opinion that they are applicable as to those heirs—the children of María Bernarda Quirós y Figueroa—who were not parties to the instrument of assignment; and that they are not applicable as to the heirs who assigned their rights and interests as such heirs in the property in question. Said assignors can not be considered as third persons in relation to their assignee and his heirs or successors in interest, inasmuch as the assignors participated in the contract of assignment which the defendants had presented as a basis for their alleged right of possession. If the heirs had made an assignment in favor of another person and the assignee had recorded his right, said assignee woud then be a third person against whom neither José Antonio Ramos nor his heirs could set up their unrecorded title. The rejected instrument placed Ramos and his heirs in the same legal position which the assignors occupied prior to the assignment. Upon acquiring the rights and interests assigned by that instrument, the assignees acquired the right which the assignors had to apply for the re-

cording of their interests in the inheritance from their mother and of the assignment of those interests in favor of the assignee. *Carle v. Benítez*, 46 P.R.R. 182, 187.

The lower court erred in rejecting the instrument marked "Defendants' Exhibit A" and in refusing to acknowledge the effect and validity thereof as against the parties thereto and their privies.

■■ According to the above analysis of the evidence, it appears that the defendants own, not only the two-fifths interest which they acquired from the majority of the heirs of Isidora Figueroa, but also the one-half interest which might have belonged to Marcelino Quirós, or at least 20 acres additional. But even so, it would appear that they never purchased the one-tenth interest in the property which originally belonged to María Bernarda Quirós and later to her heirs Lorenzo, Bernardino, and Margarita González Quirós.

We think, however, that the evidence as a whole shows that the defendants hold title to that one-tenth undivided interest and in fact to the whole property, by extraordinary prescription.

The evidence definitely establishes that the defendants and their predecessors in interest have been in possession of the *whole* property, as owners, in open hostility to the claims of the plaintiffs and their predecessors in interest ever since July 5, 1907, that is, for over 30 years prior to the filing of the complaint on August 2, 1938.

It is true that in 1916 the plaintiffs filed an action of revendication but that action was dismissed, after the plaintiffs had introduced their evidence and by reason of the insufficiency thereof, on October 31, 1917.

Therefore, the action brought in 1916 did not interrupt the period of limitation, according to the express provisions of § 1846 of the Civil Code (1930 ed).

We have already stated that the defendants and their predecessors in interest have held possession of the property

in question for over 30 years, as owners, and the evidence also shows that said possession has been open, peaceable, and uninterrupted, and that when the predecessor in interest of the defendants took possession she had already acquired, by purchase, certain undivided interest in the property, the remaining interests being held by the plaintiffs or some of them.

■ It is provided by § 1833 of the Civil Code (1930 ed) that prescriptive rights acquired by one coproprietor or tenant in common shall accrue to the benefit of all the others, and by § 1865 that, as between co-owners, the action to demand the partition of the thing held in common does not prescribe.

Neither of those two Sections, which are based on the general rule that the possession held by a co-owner does not exclude the rights of the other co-owners, is applicable to the case at bar, where the pleadings and the evidence show that the defendants have held possession, as sole owners, since 1907, in open hostility to the claims of the plaintiffs.

Commenting on § 1965 of the Spanish Civil Code, equivalent to § 1865 of our Code, Manresa admits that the general rule that a co-owner can not acquire by prescription the rights belonging to the other co-owners, is subject to the exception of the case where a co-owner holds possession in a manner openly adverse to the rights of the other coproprietors. He says (12 Manresa 858) :

"However, the imprescriptibility of the action to demand the division of an inheritance, known in the Roman Law as *familiae erciscunde,* cannot be invoked where one of the coheirs has possessed the whole of the inheritance as owner and for a sufficient time to acquire it by prescription, because said action is necessarily based on the possession in common or *pro indiviso* of the hereditary property, as has been acknowledged by that court in its judgment of April 15, 1904. The court has also declared, by a judgment rendered on May 21 of that same year, that 'after it has been proved to the satisfaction of the court *a quo* that the property in question was not a part of an individed inheritance but belonged to the separate estate

·of a certain person, the principle of the imprescriptibility of the aforesaid action cannot properly be invoked against said person'; which principle forms the basis of the prohibition set forth in said Sec. 1965. Moreover, it should be borne in mind that, as has been held by same Supreme Court in its judgments of January 15, 1902, and June 22, 1904, the action between coheirs or co-owners to demand the partition of the inheritance or of the thing held in common, to which said Section refers, is separate and apart from the action of revendication which may be brought regarding the ownership *pro solido* of the whole estate, and really.if what is involved is the recovery of hereditary property or a part of the common estate and not the partition thereof, the prohibition contained in said Section does not apply.''

In the Philippines, whose Civil Code contains provisions that are identical to those of our Code or of the Spanish Code which we have just cited, it has repeatedy been held that, although the general rule is that a co-owner cannot acquire by prescription the rights belonging to the other co-owners, said rule is inapplicable where it is shown that the claimant co-owner has held possession in a manner openly hostile to the rights of the other co-owners. *Casañas* v. *Roselló,* 50 Phil. Rep. 97; *Ramos* v. *Ramos,* 45 Phil. Rep. 362; *De los Santos* v. *Santa Teresa,* 44 Phil. Rep. 811; *De Castro* v. *Echarri,* 20 Phil. Rep. 23.

The openly hostile character of the possession held by the defendants as against the claims of the plaintiffs is eloquently set forth by the plaintiffs themselves both in the complaint filed in 1916 and in the one filed in the case at bar. Therefore, we·are of the opinion that the defendants have established that they are owners of the whole property by extraordinary prescription.

The judgment appealed from should be reversed and another rendered instead dismissing the complaint, with costs against the plaintiffs.

Mr. Justice De Jesús and Mr. Justice Córdova did not participate herein.